# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED NATURAL FOODS, INC. and SUPERVALU, INC., | Case No. 21-CV-1174 (NEB/ECW) |
| Plaintiffs, | |
| v. | ORDER ON MOTION FOR PRELIMINARY INJUNCTION |
| TEAMSTERS LOCAL 120, | |
| Defendant. | |

On May 13, 2021, United Natural Foods, Inc., and Supervalu, Inc. (collectively, "UNFI"), moved for an expedited preliminary injunction. (ECF No. 7.) The Court granted that motion on May 19, 2021. (ECF No. 23.) The Court now provides the findings and legal conclusions in support of its decision.

Teamsters Local 120 ("Union") accused UNFI of favoring non-union employees at a wholesale grocery warehouse. After the parties could not settle the dispute through the informal process set forth in the collective bargaining agreement ("CBA"), the Union moved eight grievances about the issue to eight separate arbitrations before four different arbitrators. At the first arbitration, the parties presented opening statements, arguing in part over claimed procedural defects with the process of choosing the arbitrator. The Union refused to go forward with the first arbitration after opening statements because UNFI reserved its rights to challenge the alleged procedural defects in federal court. The

Union also canceled the next five arbitrations. It left in place the final two arbitrations, both before arbitrator Richard Miller, leading UNFI to accuse the Union of arbitrator-shopping. UNFI sued, arguing that the Union had breached the CBA by failing to follow its arbitration requirements. UNFI also sought an injunction staying the final two arbitrations pending resolution of its claims before the Court. The Court granted the motion at the hearing and now provides this opinion explaining its rationale.

**BACKGROUND**[1]

## I.  Arbitration and the Grievance Resolution Provisions

The CBA has a detailed process for resolving disputes, or "grievances," that arise between UNFI and the Union. The process is set forth in Articles 15 and 16 of the CBA. Article 15 prescribes an informal, multistep process that ends in attempted resolution before a four-member Labor-Management Council. (ECF No. 1-1 ("CBA") art. 15.02.) Outside legal counsel may not participate in the first few steps of the informal process. (*Id.*) If the Labor-Management Council cannot resolve the dispute, the parties may pursue arbitration. (*Id.* art. 15.03.) If UNFI or the Union fails to follow the timelines of the informal resolution process (which the parties can alter only by written agreement), the party that fails to prosecute loses. (*Id.* arts. 15.04, 15.05.)

---

[1] Although the Union accuses UNFI of presenting "an incomplete and distorted" version of the facts, (ECF No. 17 at 1), the Union presents no factual material that contradicts either the Complaint or UNFI's declarations. The Court therefore sets forth the facts as presented by the Complaint and the supporting records provided by UNFI.

Article 16 of the CBA covers arbitration of grievances, and, like Article 15, it sets forth strict timelines. If the parties cannot resolve the issue through the informal process and instead pursue arbitration, the party seeking arbitration must do so within 30 calendar days from a decision from the Labor-Management Council. (*Id.* art. 16.01.) When the party notices arbitration, it must request a panel of seven arbitrators. It then has ten days to begin striking arbitrators.[2] (*Id.* arts. 16.01, 16.02.) Within 30 days of selecting an arbitrator, the parties must agree on an arbitration date; the arbitrator must "issue a decision" within 30 days of the submission of the parties' briefs. (*Id.* art. 16.03.) This timeline can only be extended by written agreement of the parties. (*Id.* art. 16.05.)

The CBA also addresses the scope of the arbitrator's authority under it. An arbitrator hearing a grievance "shall have jurisdiction and authority only to interpret and apply the express provisions of th[e CBA]. The Arbitrator shall not have authority to alter, amend, subtract from, add to, or otherwise modify any of the terms of th[e CBA]." (*Id.* art. 16.04.) And of vital importance to this case, the CBA states that "[a]ll grievances noticed for arbitration shall, unless settled, be heard by an arbitrator."(*Id.* art. 16.01.)

## II.    The Disputes

Between June 2020 and September 2020, the Union submitted eight grievances against UNFI. (ECF No. 1 ("Compl.") ¶ 1(a), (b).) These grievances related to allegations

---

[2] The moving party strikes first, then the non-moving party, until one arbitrator remains, who will hear the case. (CBA art. 16.02; ECF No. 1 ¶ 78.)

that UNFI favored non-union, temporary employees over union employees. (*E.g.*, *id.* ¶¶ 18, 27.) On July 30, 2020, the Labor-Management Council was unable to resolve the first grievance ("Grievance 461"). (*Id.* ¶¶ 19–20.) The Union's Business Agent timely moved Grievance 461 to arbitration per Article 16 of the CBA; the Union simultaneously requested a panel of arbitrators. (*Id.* ¶¶ 22, 93.) Similarly, the Labor-Management Council could not resolve the second grievance ("Grievance 523"), which also went to arbitration. (*Id.* ¶¶ 27–30.) This process occurred for six more grievances, all relating to UNFI favoring non-union, temporary workers over union workers. (*Id.* ¶¶ 35–74.)

After moving Grievance 523 to arbitration, on August 3, 2020, the Union requested a panel of arbitrators, which it received. (*Id.* ¶ 85.) The Union did not begin striking arbitrators within 10 days (as was required by the CBA). (*Id.* ¶ 86; *see* CBA art. 16.02.) The Union then requested a second panel of arbitrators; again, it failed to begin striking arbitrators within 10 days. (Compl. ¶¶ 88–89.) The Union also requested two panels of arbitrators for Grievance 461 and similarly failed to begin striking arbitrators from either. (*Id.* ¶ 93.) UNFI sought to consider both Grievance 523 and Grievance 461 resolved in its favor as a result of the Union's failure to follow the CBA's procedures. (*Id.* ¶¶ 90–92, 94–97.)

The Union and UNFI disagreed over the proper way forward, given that they had two separate panels of arbitrators for Grievance 461 and Grievance 523. (*Id.* ¶¶ 98–101.) Each side proposed possible solutions. (*Id.* ¶¶ 102–20.) Ultimately, UNFI agreed to use

the first panels for both Grievance 461 and Grievance 523, subject to its reservation of rights to raise the procedural issues in court. (*Id.* ¶¶ 121, 141; *see id.* ¶ 116.) UNFI and the Union selected Jeffrey W. Jacobs to arbitrate Grievance 523 and Christine Ver Ploeg for Grievance 461.[3] (*Id.* ¶ 121.) UNFI and the Union scheduled arbitration for Grievance 523 for January 18, 2021. (*Id.* ¶ 129.) The parties also scheduled: Grievance 461 for April 2021 with Arbitrator Ver Ploeg; three more grievances before Arbitrator Jacobs, one each in February, March, and April 2021; one grievance before Arbitrator Laura Cooper in April 2021; and (importantly here) the final two grievances before Arbitrator Richard Miller in May 2021—one on May 12, the other on May 20. (*Id.* ¶¶ 1(b), 26, 41, 48, 55, 62, 68, 74.)

### III.    The Arbitration Proceedings

Based on UNFI's reservation of rights, the parties agreed to bifurcate the arbitration proceedings, address the procedural issues first, and only proceed to the merits if the arbitrator resolved the procedural issues in favor of the Union. (*Id.* ¶¶ 122–23, 126–28.)

At the January arbitration of Grievance 523 before Arbitrator Jacobs, UNFI and the Union disputed the issue of the arbitrator's jurisdiction to issue a binding award due to the existence of two panels of arbitrators. (*Id.* ¶¶ 131–33; *see generally* ECF No. 1-2.)

---

[3] There appears to be an error in the Complaint over this issue: it alleges that the parties selected both Arbitrator Jacobs and Arbitrator Ver Ploeg to hear Grievance 523. (Compl. ¶ 121.) The rest of the documents filed, however, reflect that Arbitrator Ver Ploeg was to hear Grievance 461 and Arbitrator Jacobs was to hear Grievance 523. (*E.g., id.* ¶ 1(b); ECF No. 8 at 5.)

Because of its concern that the arbitration would not be final, the Union asked to adjourn the hearing until a court could weigh in on the issue. (Compl. ¶¶ 135–39.) Arbitrator Jacobs consented and adjourned the hearing. (*Id.* ¶ 140.)

For Grievance 461, the story is much the same, although the arbitration never began. UNFI reserved its rights and the parties requested a bifurcated proceeding. (*Id.* ¶¶ 141–44.) After Arbitrator Jacobs adjourned arbitration of Grievance 523, the Union, citing the possibility of conflicting awards for multiple grievances, decided to withdraw, "without prejudice to its position," from arbitrating the remaining grievances in front of Arbitrator Jacobs, Arbitrator Ver Ploeg, and Arbitrator Cooper (but not Arbitrator Miller). (*Id.* ¶¶ 145–48.) When Arbitrator Jacobs asked if he could "close" his files on the arbitrations, the Union informed him that he could do so, because it was proceeding on the arbitrations before Arbitrator Miller. (*Id.* ¶¶ 149–50.)

## IV.    Procedural History

On May 7, 2021, UNFI filed the Complaint. (Compl.) The Complaint brings four claims, three for breach of the CBA and one for declaratory judgment. (*Id.* ¶¶ 160–85.) Count I alleges that the Union violated the CBA, by refusing to arbitrate the first six grievances. (*Id.* ¶¶ 160–65.) Count II charges the Union with violating the CBA by disregarding the CBA's procedural requirements for selecting an arbitrator and scheduling arbitration. (*Id.* ¶¶ 166–73.) Count III asserts that the Union's refusal to continue participating in the January 18 arbitration was itself a separate violation of the

CBA for failure to arbitrate. (*Id.* ¶¶ 174–77.) Finally, in Count IV, UNFI seeks a declaration that: (1) the CBA requires the party seeking arbitration of a grievance to seek a single arbitral panel and begin striking arbitrators within 10 days; (2) because the Union violated these requirements, UNFI did not have to submit Grievance 461 or Grievance 523 to arbitration; and (3) those grievances are resolved in UNFI's favor. (*Id.* ¶¶ 178–85.)

The same day it filed the Complaint, UNFI's counsel contacted Arbitrator Miller, asking him to postpone the arbitrations because of the pending case. (ECF No. 9 ("Miscimarra Decl.") ¶ 9.) On May 12, 2021, Arbitrator Miller granted UNFI's request "for logistical reasons" for the May 12 arbitration, but denied the request to postpone the May 20, 2021 arbitration. (*Id.* ¶ 10; ECF No. 20 ("2d Miscimarra Decl.") ¶ 12.) UNFI then sought an injunction staying proceedings before Arbitrator Miller and enjoining the parties from proceeding with them, at least until resolution of UNFI's claims before the Court. (ECF No. 10 at 5–6.)

## ANALYSIS

A preliminary injunction is an "extraordinary" remedy, which the Court never awards "as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction preserves the status quo pending resolution of the merits of a claim and prevents irreparable injury in the interim. *Kansas City S. Transp. Co. v. Teamsters Local Union #41*, 126 F.3d 1059, 1066 (8th Cir. 1997). In analyzing a motion for preliminary injunctive relief, the Court considers the four *Dataphase* factors: (1) the potential threat of

irreparable harm to the movant in the absence of injunctive relief; (2) the balance of the harms the parties will suffer in the presence or absence of an injunction; (3) the likelihood that the movant will ultimately succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The party seeking the injunction bears the burden of showing that an injunction is proper. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Together with the *Dataphase* factors, the Court must consider here the effect of the Norris-LaGuardia Act's ban on federal courts issuing injunctions in labor disputes. It is the Union's position that the Norris–LaGuardia Act bars injunctive relief in these circumstances.

## I.     The Norris–LaGuardia Act

The Union is correct that the Norris–LaGuardia Act ("NGLA") generally prevents federal courts from issuing injunctions in labor disputes. *See* 29 U.S.C. § 101 *et seq.* The NLGA has a broad scope that covers this dispute. *Id.* § 101 ("No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute . . . ."); *Id.* § 113(c) ("The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment . . . .").

## A.     Substantive Requirements of the Norris–LaGuardia Act

There is an exception to the NLGA, however: the "congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes" overrides the NLGA's bar on labor injunctions when the injunction is to compel a party to the labor dispute to arbitrate when that party agreed to do so. *Boys Markets, Inc. v. Retail Clerks Union, Loc. 770*, 398 U.S. 235, 252–54 (1970); *see Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1352 (8th Cir. 1995) ("The Supreme Court determined [in *Boys Markets*] that the nonintervention policy of the [NGLA] should yield, and an injunction should enter, when the parties have agreed to submit the disputed issue to mandatory arbitration."). For the *Boys Markets* exception to apply, there are two requirements: the "underlying dispute must be subject to mandatory arbitration under the labor contract and the injunction must be necessary to prevent arbitration from being rendered a meaningless ritual." *Local Union No. 884*, 61 F.3d at 1352 (quotation omitted).

The parties do not dispute that the underlying grievance—use of non-union, temporary employees instead of Union employees—is subject to arbitration, meeting the first prong of *Boys Markets*. As for the second prong, an employer can only obtain an injunction to maintain the status quo if the union's activity "has the effect of frustrating the arbitral process, or rendering it a hollow formality." *Local Union No. 884*, 61 F.3d at 1354 (quotation omitted). This occurs "only if any arbitral award in favor of" the

employer "would substantially fail to undo the harm occasioned by the lack of a status quo injunction." *Id.* (quotation omitted). In other words, the employer must stand to suffer irreparable injury and that injury "must threaten the integrity of the arbitration process itself." *Id.* (quotation omitted).

UNFI has shown that no arbitral award could undo the harm it would suffer if the arbitration before Arbitrator Miller proceeds as scheduled. Generally, absent a material change in circumstances, earlier arbitrations over the same contract language, between the same parties, and on similar facts, are binding on later arbitrations. F. Elkouri & E. Elkouri, *How Arbitration Works*, Ch. 11, § 11.2A, at nn. 38–42 (BNA 8th ed. 2019); (*see also* ECF No. 19 at 5–7 (collecting arbitration decisions).) The parties agree that all eight grievances meet this standard. (ECF No. 19 at 10; ECF No. 20-1 ("Because of the multiple grievances and the possibility of obtaining conflicting awards, the Union has decided to withdraw extraneous grievances and pursue two grievances to binding arbitration.").) So Arbitrator Miller's decision, if issued, may bind decisions that should have occurred first-in-time, and should have thus potentially bound Arbitrator Miller. An arbitrator bound by collateral estoppel cannot then ignore the previous decisions—and this would undermine the stability of the labor agreement, regardless.[4] Unwinding such an award is sufficiently irreparable to meet this standard.

---

[4] There is a possibility that the Court could vacate an award that Arbitrator Miller would issue as a result of "misconduct in refusing to postpone the hearing, upon sufficient cause shown." 9 U.S.C. § 10(a)(3). But this is a high bar to clear and the Court's review of arbitral

In addition, the Union's actions appear to have "threaten[ed] the integrity of the arbitration process." *Local Union No. 884*, 61 F.3d at 1354 (quotation omitted). The Union moved eight grievances to arbitration. The CBA provides that all grievances "noticed for arbitration shall, unless settled, be heard by an arbitrator." (CBA art. 16.01.) The Union has now prevented six of those grievances from being heard by an arbitrator, threatening the arbitration process.

The Union makes several arguments against this conclusion. First, the Union asserts that an employer cannot invoke the *Boys Markets* exception to the NLGA. (ECF No. 17 at 6–7.) But in *Boys Markets*, the employer obtained the injunction against the union. 398 U.S. at 237–38. And the Eighth Circuit has made it clear that, in the *Boys Markets* context, what is good for the goose is good for the gander—if a union may obtain an injunction in aid of arbitration, so can an employer. *Local Union No. 884*, 61 F.3d at 1352 (applying the *Boys Markets* exception to an injunction against the *employer* when its previous decisions had only applied the doctrine against *unions*).

Second, the Union asserts that UNFI's harm is not irreparable because UNFI can raise these same issues before Arbitrator Miller and could receive an award in its favor. (ECF No. 17 at 7.) This misreads UNFI's potential harm. UNFI may suffer harm from

---

awards is highly deferential. *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) ("Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists."). The Court regards this possibility as sufficiently unlikely as to not alter the irreparable harm calculus.

being forced to arbitrate a dispute in a manner inconsistent with the CBA—a harm that may be difficult to fully compensate with an award of damages. UNFI's harm, in essence, is a possible irremediable breach of the CBA and breakdown of the labor agreement between it and the Union.

Last, the Union argues that the purpose of *Boys Markets* is to preserve the status quo pending arbitration, not to stop arbitrations that are soon to occur. (*Id.* at 7–8.) Again, the Union misunderstands UNFI's potential harm. UNFI appears to have no issue with eventually conducting the two arbitrations currently set before Arbitrator Miller, but it may suffer harm if those arbitrations occur before arbitrations that the parties previously scheduled before different arbitrators. Maintaining the status quo here requires resolving first those disputes that the CBA's processes dictate are resolved first under the CBA.

UNFI has established the propriety of a *Boys Markets* injunction.

## B.    Procedural Requirements of the Norris–LaGuardia Act

The NLGA also requires courts to follow certain procedures in issuing a labor injunction. 29 U.S.C. §§ 107–09. Section 7 requires the Court to take evidence in the form of testimony before issuing an injunction and make several findings, including that unlawful acts have been threatened and may occur in the absence of the injunction and that public officers are unwilling or unable to protect property at issue, as well as the traditional injunction factors. 29 U.S.C. § 107. Section 8 bars the Court from issuing an injunction unless the party seeking the injunction has complied with the law and has

made "every reasonable effort to settle" the dispute. *Id.* § 108. Finally, Section 9 requires that the Court make findings of fact before issuing an injunction and that the injunction restrain only the specifically unlawful acts at issue. *Id.* § 109.

There is no binding authority on whether Sections 7 through 9 apply to *Boys Markets* injunctions, and the Eighth Circuit has specifically declined to address the issue. *Kansas City S. Transp. Co.*, 126 F.3d at 1067 ("We decline to decide whether the procedural provisions of the [NGLA] apply to *Boys Markets* injunctions."). There is, however, a circuit split on the issue. *Id.* n.7.

The Court need not decide whether these procedural requirements apply to *Boys Markets* injunctions. Sections 7 and 9 do not apply if the facts that merit issuance of the injunction are undisputed.[5] *Id.* at 1067–68. And the facts here are uncontested. *See supra* note 1.

As for Section 8, UNFI has met its requirements. The Union has identified no obligations or laws that UNFI has broken, other than an unsupported assertion that

_____

[5] To the extent that the Union asserts that the NLGA requires the Court find that "unlawful acts have been threatened and will be committed" absent an injunction, the Union's refusal to abide by the CBA, which has led to this lawsuit, may constitute such an unlawful action. 29 U.S.C. 107(a); *see Unlawful Act*, Black's Law Dictionary (11th ed. 2019) ("Conduct that is not authorized by law; a violation of a civil or criminal law."). As for damage to property, the Eighth Circuit has issued a *Boys Markets* injunction in a case involving implementation of a new health care benefits program, where no strike was threatened, nor, so far as the Court can tell, any property damage. *Local Union No. 884*, 61 F.3d at 1349–51. Accordingly, the Court considers that Sections 7 and 9 of the NLGA are satisfied here.

UNFI's attempt to "dictate what grievances a union must arbitrate . . . likely violates federal labor law."[6] (ECF No. 17 at 9.) The Court does not consider this assertion to be sufficient to rise to the level described in Section 8. And UNFI has tried to resolve these disputes through arbitration and other informal means before seeking relief from the Court. (*See, e.g.*, Compl. ¶¶ 107, 129–40; 2d Miscimarra Decl. ¶¶ 8–11.)

The NLGA's requirements are satisfied and the Court now turns to the *Dataphase* factors.

## II.    Irreparable Harm

The foundation of issuing an injunction "has always been irreparable harm and inadequacy of legal remedies." *Watkins Inc.*, 346 F.3d at 844. In any injunction case, the Court's "threshold inquiry is whether the movant has shown the threat of irreparable injury." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). "[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Bandag, Inc. v. Jack's Tire & Oil Co.*, 190 F.3d 924, 926 (8th Cir. 1999).

Irreparable harm is present where "a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."

---

[6] The Union cites no law that UNFI's conduct may have violated. And in any event, UNFI appears to be seeking to compel the Union to comply with the CBA's requirement that, once a dispute is escalated to arbitration, the parties arbitrate it absent a settlement. (CBA art. 16.01.) This does not appear to be dictating what grievances the Union must arbitrate because the Union moved those grievances to arbitration in the first place. (Compl. ¶¶ 22, 30, 38, 45, 52, 59, 65, 71.)

*Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To show irreparable harm, the movant "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996); *see Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1058 (D. Minn. 2013) ("Possible or speculative harm is not enough to justify a preliminary injunction.") (cleaned up).

To establish the propriety of an injunction under the NLGA, the moving party must show irreparable harm. *Local Union No. 884*, 61 F.3d at 1354; Analysis Part I.A, *supra*. The Court has concluded that the NLGA does not bar issuance of an injunction here, in part because UNFI stands to suffer irreparable harm in the absence of an injunction. UNFI has shown that this harm is sufficiently certain, serious, and imminent to merit an injunction and the Union has not rebutted it. *Iowa Utils Bd.*, 109 F.3d at 425.

### III.    Likelihood of Success on the Merits

As the moving party, UNFI carries the burden of showing a likelihood of success on the merits. *Watkins Inc.*, 346 F.3d at 844. UNFI must show a "reasonable probability of success" or a "fair chance of prevailing." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quotation omitted). This does not require UNFI to show that it is more likely than not to succeed on its claims against the Union. *Dataphase*, 640 F.2d at 113.

For UNFI to prevail on its breach of contract claim, it must show: (1) the formation of a contract; (2) its performance of any conditions precedent for the defendant's

performance; and (3) the defendant's breach of the contract. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). Breach is the only element the Court need consider. UNFI asserts that the Union breached the CBA by refusing to arbitrate grievances that it noticed for arbitration. This is a plausible reading of Articles 15 and 16 of the CBA and the Union has not refuted this interpretation. UNFI has established sufficient likelihood of success on the merits.

### IV. Balance of the Harms

In balancing the harms, the Court weighs the harm that the movant is likely to suffer without the requested injunction against the harm other parties will suffer if the Court issues it. *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993).

The Court concludes that, although the balance of the harms does not weigh strongly here, it weighs in favor of UNFI. The Union asserts that the harm it will suffer if the Court stays the arbitration will outweigh any harm that UNFI will suffer if the arbitration goes ahead. This argument fails. As discussed above, UNFI stands to suffer irreparable harm if the arbitration proceeds; the Union, on the other hand, has identified no harm that it would suffer if the Court delayed the arbitrations before Arbitrator Miller until after resolution of the merits of this case.

## V.    Public Interest

The parties do not address the public interest in any depth but the Court concludes that it weighs for UNFI. Although the Union asserts that UNFI is improperly interfering in its decisions to arbitrate ("likely violat[ing] federal labor law" in the process) and that the public interest therefore weighs in its favor, the Court in unconvinced. (ECF No. 17 at 9); *see supra* note 6. The method through which the parties to a CBA resolve their disputes—here, arbitration—"is at the very heart of the system of industrial self-government." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960). And *Boys Markets* reflects a strong federal policy "favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes." 398 U.S. at 253. The public therefore has an interest in maintaining the arbitration process for which the parties bargained.

## VI.    Weight of the Factors

After weighing all the factors, the Court concludes that UNFI is entitled to a preliminary injunction. UNFI has shown a likelihood of irreparable harm and success on the merits, and both the balance of the harms and the public interest favor an injunction. UNFI has carried its burden to show that this case merits injunctive relief.

## VII.    Bond

Federal Rule of Civil Procedure 65(c) requires that, should the Court issue an injunction, it must require security to cover the possible harm to a party that is ultimately

found to be wrongfully restrained. Fed. R. Civ. P. 65(c). The Court finds that, absent evidence from the Union as to the possible harm it may suffer from being enjoined from arbitrating before Arbitrator Miller, a sum of $10,000 is sufficient to pay for any damages the Union may sustain if it is later found to have been wrongfully enjoined.

Dated: May 26, 2021                                BY THE COURT:

                                                   s/Nancy E. Brasel
                                                   Nancy E. Brasel
                                                   United States District Judge