UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED NATURAL FOODS, INC., and SUPERVALU INC., | Case No. 21-CV-1174 (NEB/ECW) |
| Plaintiffs, | ORDER ON MOTION TO DISMISS |
| v. | |
| TEAMSTERS LOCAL 120, | |
| Defendant. | |

Teamsters Local 120 (the "Union") accused United Natural Foods, Inc., and Supervalu Inc., (collectively, "UNFI") of favoring non-union employees at a wholesale grocery warehouse. After the parties could not settle the dispute through the informal process set forth in the collective bargaining agreement ("CBA"), the Union moved eight grievances to arbitration, six of which it then cancelled or refused to further arbitrate (and two of which involved substantial procedural defects). The Union left in place the final two arbitrations, both before the same arbitrator. UNFI sued, accusing the Union of breaching the CBA by refusing to arbitrate and seeking a declaration that it had prevailed on the merits of the cancelled arbitrations. The Union now seeks dismissal of UNFI's claims. For the reasons below, the Court denies the motion.

BACKGROUND

Although the Court's opinion granting UNFI's motion for preliminary injunction details the dispute leading to this case,[1] (ECF No. 29 at 2–7), the Court also sketches the basic contours of the dispute here.

### I.     The Grievance Procedure

The CBA has a detailed process for resolving disputes, or "grievances," that arise between UNFI and the Union. Articles 15 and 16 of the CBA set forth this process. Article 15 first defines "grievance" as "differences, disputes or complaints arising over the interpretation of the contents of this Agreement which cannot be resolved between the employee and his immediate supervisor . . . ." (CBA, art. 15.01.) The CBA then lays out a three-step grievance procedure: if the first step does not resolve the grievance, the Union may escalate the grievance to the next step on the ladder, ending with a Labor-Management Council. (*Id.* art. 15.02.) There are specific deadlines that the Union must meet to timely continue the grievance (and UNFI must also timely respond), and only written consent of both parties can extend them. (*Id.*; *id.* art. 15.05.) If either party disregards these timelines, that party forfeits its claim or defense. (*Id.* art. 15.04.)

---

[1] Although UNFI has filed an Amended Complaint since the Court issued its order on UNFI's motion for preliminary injunction, (*see* ECF No. 38), UNFI has made no substantive changes in its allegations nor has the Union included with its motion any documents that would alter the Court's previous recounting of the facts. (*Compare* ECF No. 1, *with* ECF No. 38.) The parties agreed that the Amended Complaint does not moot the Union's motion to dismiss. (ECF No. 42; *see* ECF No. 44.)

If the Labor-Management Council cannot resolve the grievance, either UNFI or the Union may then seek to arbitrate the grievance.[2] (*Id.* art. 15.03.) Like the grievance procedure, the arbitration procedure has strict deadlines that the parties can extend only by agreement. (*Id.* arts. 16.01, 16.02, 16.03, 16.05.) Under the CBA, the arbitrator has "jurisdiction and authority only to interpret and apply the express provisions of [the CBA.] (*Id.* art. 16.04.) The Arbitrator shall not have authority to "alter, amend, subtract from, add to, or otherwise modify" any of the CBA's terms. (*Id.*) And the arbitrator's decision "shall be final and binding upon [UNFI, the Union, and employees.]" (*Id.*) If a grievance goes to arbitration it "shall, unless settled, be heard by an arbitrator." (*Id.* art. 16.01.)

## II.     The Disputes and the Arbitration Proceedings

Between June 2020 and September 2020, the Union had eight grievances against UNFI. (ECF No. 38 ("AC") ¶ 1(a), (b).) The Union submitted each grievance to arbitration. (*Id.* ¶¶ 19–22, 27–30, 35–74.) For two grievances, the Union failed to comply with the CBA's arbitration procedures, requesting multiple panels of arbitrators and also failed to

---

[2] The CBA is not entirely clear on which party may submit a grievance to arbitration. Article 15 says that if "the Labor-Management Council . . . cannot reach agreement, the grievance may be submitted to arbitration . . . . Such decision must be done by either of the local parties." (CBA art. 15.03.) Article 16, however, says that any "grievance not settled through the above-mentioned procedure [of Article 15] shall, if it is to be processed further, be appealed by the Union to arbitration." (*Id.* art. 16.01.) The parties did not raise the issue, so the Court, for purposes of this motion, assumes (but does not decide) that either party may seek arbitration following an unsuccessful resolution at the Labor-Management Council.

3

begin timely selecting arbitrators from those panels. (*Id.* ¶¶ 85–86, 88–97.) After considerable wrangling over these procedural hurdles, the parties scheduled the arbitrations, with UNFI reserving its right to raise the procedural issues in court. (*Id.* ¶¶ 1(b), 26, 41, 48, 55, 62, 68, 74, 121, 129, 141.)

At the beginning of the first scheduled arbitration, the Union asked to withdraw, raising concerns that the arbitrator's decision might not be final because of UNFI's reservation of rights to make a procedural challenge to any adverse award. The arbitrator consented, and the arbitration was adjourned. (*Id.* ¶¶ 131–33; *see generally* ECF No. 38-2 (transcript of arbitration).) At the second arbitration hearing, the story was much the same: the Union withdrew from arbitration, arguing that the other grievances were effectively identical and citing concerns about possible conflicting awards. (*Id.* ¶¶ 141–44.) The Union then withdrew from all but the last two arbitrations scheduled. (*Id.* ¶¶ 145–48.)

### III.    Procedural History

The Amended Complaint asserts four claims: three for breach of the CBA under Section 301(a) of the Labor Management Relations Act[3] and one for declaratory judgment. (AC ¶¶ 160–85.) Count I alleges that the Union violated the CBA by refusing to arbitrate the first six grievances on the time and date set, before the arbitrator selected. (*Id.* ¶¶ 160–65.) Count II charges the Union with violating the CBA by ignoring the CBA's grievance

---

[3] As codified, 29 U.S.C. § 185.

resolution timelines. (*Id.* ¶¶ 166–73.) Count III accuses the Union of violating the CBA by walking away from the first arbitration. (*Id.* ¶¶ 174–77.) Finally, Count IV seeks a declaration that: (1) UNFI did not have an obligation to submit the procedurally defective grievances to arbitration because there was no agreement to arbitrate under those circumstances; (2) the Court can resolve those procedural arbitrability issues because there was no agreement to arbitrate; and (3) the grievances that the Union refused to arbitrate are resolved in UNFI's favor. (*Id.* ¶¶ 178–85.) In the alternative, UNFI seeks a declaration that the Court can resolve the two grievances with procedural defects on the merits and an order resolving those grievances in its favor. (*Id.* ¶ 186.)

The Union moved to dismiss, arguing that it has the unilateral right under the CBA to withdraw a grievance at any time and that, since it has withdrawn the grievances, there is no justiciable controversy before the Court. (ECF No. 30.)

## ANALYSIS

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation and quotation omitted). At this stage in the litigation, the Court must accept as

true all factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). Factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). "'[T]hreadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a presumption of truth" when considering a Rule 12(b)(6) motion. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (*en banc*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court's determination of whether a plaintiff has met this standard is "context-specific" and requires it to "draw on its judicial experience and common sense." *Id.* (quotation omitted).

But before the Court treads the familiar path of Rule 12(b)(6), it must first consider its jurisdiction over the case.

**I.    Justiciability**

The Union argues that the case is moot because it has withdrawn the grievances that form the base of this dispute. (ECF No. 32 at 15–16.)

Article III limits the Court's jurisdiction to "cases" and "controversies" under the United States Constitution. U.S. Const. art. III, § 2. A case becomes moot (and therefore no longer a case or controversy for Article III purposes) when the issues it presents are no longer "live" or when the parties no longer possess a "legally cognizable interest in the outcome." *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013).

The Union asserts that no party has a cognizable interest in the case because the Union has withdrawn its claims and, "as the aggrieved party, is no longer contending that [UNFI] breached the [CBA] . . . . It is not asking [UNFI] to do [anything] . . . and is not seeking monetary or other relief," nor is it seeking an interpretation of the CBA. (ECF No. 32 at 16.) Ignoring for the moment the Union's ability (or lack thereof) to withdraw grievances from arbitration, in so arguing, the Union misses the thrust of UNFI's claims. UNFI is alleging that the Union breached the CBA by failing to arbitrate. (AC ¶¶ 160–77.) Essentially, UNFI is claiming that the Union's withdrawal of the grievances from arbitration is the breach—and UNFI is seeking damages for those alleged breaches, which is a live controversy, regardless of the status of the underlying dispute. (*See id.* at 53–54 (seeking damages for alleged breach of contract).) There is a justiciable controversy before the Court.

**II.     Breach of Contract Claims**

Under Minnesota law,[4] a breach of contract claim has three elements: "(1) formation of a contract"; (2) "performance by plaintiff of any conditions precedent to his right to demand performance"; and (3) breach. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (internal citations and quotation omitted). The Union disputes only the third element: breach.

---

[4] The CBA lacks a governing law provision. The parties—and the Court—have presumed the application of Minnesota law because the work at issue was done in Minnesota.

As noted above, the breach claimed by UNFI is that the Union refused to arbitrate. In support of its motion to dismiss, the Union claims that the Complaint requires the Court to address the "res judicata" effect of the Union's withdrawn grievances. (ECF No. 32 at 3.) Pressing this argument, the Union spends most of its brief arguing that it has the right to withdraw its grievances at any time—for any reason—and then to grieve the same issue (under slightly different circumstances, perhaps) repeatedly. (*Id.* at 6 ("Where . . . the grievances are factually distinct and show no 'strict factual identity,' a union is not precluded from pursuing similar claims in the future.").)

The problem with this argument is that it misses the point of the Complaint. UNFI does not ask the Court to decide the effect of one grievance resolution on another grievance. (*See generally* AC.) UNFI brings claims for failure to arbitrate, and it is undoubtedly allowed to do so. "Whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Moreover, despite the Union's arguments to the contrary, any reading of the CBA's language supports a plausible claim. Under the CBA's grievance procedure, the Union may start the grievance, and it has several opportunities throughout the process to abandon the grievance, at its sole discretion. (*See generally* CBA art. 15.) But once the grievance goes to the Labor-Management Council, the Union is no longer fully in

8

command: UNFI may, like the Union, escalate the grievance to arbitration, and the Union is stuck with that decision. (*Id.* art. 15.03.) And once the grievance goes to arbitration, the CBA could not be clearer: "[a]ll grievances noticed for arbitration shall, unless settled, be heard by an arbitrator." (*Id.* art. 16.01.)

Thus, resolution of the Union's motion to dismiss is straightforward. The Union and UNFI did not agree to settle the grievances that the Union moved to arbitration, and those arbitrations did not go ahead as scheduled. The Union also does not dispute that it skirted the CBA's procedural requirements for arbitration. Both failures are plausibly claimed breaches of the CBA.

### III. Declaratory Judgment Claim

In its declaratory judgment claim, UNFI seeks one of two things, either: (1) a declaration that it has prevailed on the two grievances with procedural defects; or (2) a declaration that the Court may resolve those two grievances. (AC ¶¶ 185–86.) In contrast, in its prayer for relief, UNFI seeks a judgment that *all* grievances are resolved in its favor (something it does not seek in any of the four counts it brings) and a declaration consistent with paragraphs 185 or 186 of the Amended Complaint, or, in the alternative, an "order requiring the Union to arbitrate" the remaining grievances. (*Id.* at 53–54.)

The Union does not distinguish between the various counts of the Amended Complaint in its motion—it does not address Count IV specifically. (*See generally* ECF

Nos. 32, 47.) Since no separate argument has been made about Count IV, the Court declines to dismiss it on the general grounds the Union asserts.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, the Union's motion to dismiss (ECF No. 30) is DENIED.

Dated: November 2, 2021                     BY THE COURT:

                                                                            s/Nancy E. Brasel
                                                                           Nancy E. Brasel
                                                                           United States District Judge